[Civ. No. 27922.   Second Dist., Div. Three.   Nov. 18, 1965.]

EVERT L. HAGAN, Plaintiff and Appellant, v. JOSEPH W. FAIRFIELD, Defendant and Respondent.

Jesse A. Hamilton for Plaintiff and Appellant.

Joseph W. Fairfield, in pro. per., Ethelyn F. Black and Max H. Gewirtz for Defendant and Respondent.

FORD, J.—This is an appeal from a judgment entered after the respondent Fairfield's demurrer to the second amended complaint had been sustained without leave to amend.

The pertinent portions of the three causes of action alleged in the second amended complaint will be stated. In the first cause of action it was alleged that: 1. Joseph W. Fairfield is an attorney licensed to practice in all of the courts of the State of California. 2. In the years 1962 and 1963 the plaintiff Evert L. Hagan, in his personal capacity and as majority shareholder in Benedict Heights, Inc., a corporation, was maintaining and prosecuting a series of legal actions against the defendant Fairfield and other persons for the purpose of securing the return to the corporation of property claimed to have been taken from it. 3. The plaintiff Hagan hired Michael M. Pontecore (named as a defendant) as his agent, servant and employee to perform investigative work for him with respect to such actions and the relationship between them "was one of trust, confidence and secrecy relating to said litigation and to negotiations hereinafter mentioned." 4. The plaintiff Hagan, in his personal capacity, was engaged in various real estate transactions and had been negotiating with Joseph C. Whitman (named as a defendant) and Jack Sylvester for the purchase of certain real property "interests" in the Benedict Canyon area of Los Angeles County. 5. On April 12, 1963, the plaintiff Hagan wrote a "highly confidential letter to Jack Sylvester, setting forth certain facts, offers and conditions to said Sylvester, with whom he was then negotiating as set forth above, and that one and only one copy of said letter was made for plaintiff's own use." 6. In the course of his employment the defendant Pontecore asked the plaintiff Hagan for the carbon copy of the letter and the plaintiff Hagan loaned and delivered to the defendant Pontecore that copy; the defendant Pontecore promised to return the copy to the plaintiff upon demand and to keep the contents thereof "confidential to himself and for his own direction in the course of his employment." 7. The carbon copy of the letter was the personal property of the plaintiff and was of "a value which cannot be assessed at this time,

but will be proven at the time of trial of this action.'' 8. The defendant Fairfield ''knew well the confidential position, knowledge and authority of defendant Pontecore, and that defendants Fairfield and Pontecore, intending and contriving to cheat and defraud plaintiff, did, on or about May 1, 1963, corruptly and fraudulently conspire among themselves, that said Pontecore should impart to defendant Fairfield knowledge of the doings and strategy of plaintiff in the prosecution of the lawsuits hereinafter and hereinabove set forth and of the aforesaid negotiations for the purchase of the property in Benedict Canyon.'' 9. ''Plaintiff is informed and believes, and alleges upon that information and belief, that in consequence of and pursuant to said corrupt and fraudulent conspiracy and agreement, defendant Pontecore did impart to defendant Fairfield said knowledge, and that plaintiff had written said letter to said Sylvester, describing certain facts, contentions, offers and conditions, and that defendant Pontecore did deliver or cause to be delivered, said copy of said letter to the defendant Fairfield.'' 10. Pursuant to the conspiracy and without the plaintiff's consent the defendant Fairfield disclosed the contents of the letter by attaching a photocopy thereof to certain pleadings in an action between the plaintiff and the defendant Fairfield then pending in the superior court and ''used it for the purported means of showing alleged bad faith and alleged illegal intent of plaintiff, contending that said letter showed bad faith throughout the prosecution of the various court actions referred to above, causing plaintiff mental pain and humiliation and affecting his name injuriously. All of the acts set forth above were done for the sole and only purpose of obstructing a hearing on the merits of the matters then pending in the said courts and were, in fact, committed in a conspiracy to obstruct justice, to plaintiff's damage in the sum of $25,000.00.''

The second cause of action was similar in nature to the first cause of action except that it related to a covenant not to sue. Portions of the allegations of that cause of action were as follows: 1. During the preceding three months the plaintiff Hagan, through the defendant Pontecore as his agent and employee, had been negotiating with the defendant Joseph C. Whitman for the purchase of all of the latter's interest in a corporation. 2. On April 1, 1963, at the request of the defendant Whitman the plaintiff Hagan signed a covenant not to sue Whitman and delivered the document to the defendant

Pontecore who was authorized and instructed to deliver it to the defendant Whitman in exchange for an assignment and transfer of the designated interests. The defendant Pontecore represented to the plaintiff Hagan that the defendant Whitman would make such exchange. 3. In violation of his authority and of the plaintiff's instructions, the defendant Pontecore delivered the covenant not to sue to the defendant Whitman without receiving the contemplated transfer and assignment and without consideration. 4. The defendants Pontecore and Whitman ''combined and conspired to cheat and defraud plaintiff in said transaction'' and the defendant Whitman has refused to return to the plaintiff the covenant not to sue. 5. Thereafter the defendants Pontecore and Whitman, without the plaintiff's consent, delivered or caused to be delivered that covenant to the defendant Fairfield ''in consequence of and pursuant to the aforesaid corrupt and fraudulent conspiracy and agreement, and thereupon Fairfield disclosed the contents of said covenant by attaching a photo copy thereto [sic] to a pleading in an action, then pending between plaintiff and defendant Fairfield, and used it for the purported means of showing bad faith and alleged illegal intent on the part of plaintiff, contending that it showed bad faith throughout the prosecution of the various court actions as set forth above, and did thereby attempt to interfere with the negotiations, then pending between plaintiff and said Sylvester, causing plaintiff pain and humiliation and affecting his name injuriously.'' 6. ''By reason of the things hereinbefore alleged, defendants Pontecore, Whitman and Fairfield acted wilfully, maliciously, and with a wanton disregard of the rights of plaintiff, for which plaintiff asks punitive damages against them, and each of the [sic], in the sum of $25,000.00.''

In the third cause of action declaratory relief was sought, the nature of which was disclosed by the following allegations: ''A bona fide dispute exists between plaintiff and defendants Whitman and Fairfield, as to the validity of said covenant not to sue. Plaintiff contends, on the hand [sic], that said covenant has no legal force or effect because plaintiff received no consideration therefor. Defendants Whitman and Fairfield contend, on the other hand, that said covenant is effective according to its terms.''

The sole question on this appeal is whether any cause of action is stated as against the defendant Fairfield in the second amended complaint.

With respect to the first cause of action alleged in this case we need not be concerned with the interesting problem of the protection afforded by the doctrine of the right of privacy with respect to the publication of private letters having no literary value[1] because it appears upon the face of the complaint that the publication of which the plaintiff Hagan complains consisted of attaching the letter to pleadings in judicial proceedings as to which the letter had reasonable relevancy. Such a publication is absolutely privileged insofar as the law of defamation is concerned. (See *Albertson* v. *Raboff*, 46 Cal.2d 375, 378-381 [295 P.2d 405].) If recovery cannot be had in the event that such a statement is libelous in nature, no greater relief could reasonably be expected for a publication of the nature herein involved which is asserted to constitute a violation of the right of privacy. (See *Werner* v. *Times-Mirror Co.*, 193 Cal.App.2d 111, 122 [14 Cal.Rptr. 208]; Prosser, *Privacy* (1960) 48 Cal.L.Rev. 383, 421.)[2]

The same reasoning applies to plaintiff's attempt to state a cause of action with respect to the use made by the defendant Fairfield of the covenant not to sue.

Since there is no reasonable possibility that the plaintiff could amend either the pleading of his first cause of action or of his second cause of action so as to state a sustainable cause of action for breach of the right of privacy based on the use

[1]In a comment in 13 So. Cal. L. Rev. 81 (1940), at pages 82-83, it is said: "Brandeis and Warren found in the English cases which protected against the publication of private letters having no intrinsic literary value, and of catalogues of private collections, a principle upon which their theory of the right of privacy could be based. In those cases, the English courts granted relief upon the express ground that a property right had been invaded. But Brandeis and Warren argued that such purely personal productions had no real value except in the peace of mind afforded by the ability to prevent publication, and that there were indications in these English cases of a doctrine more liberal than the limited property concept, upon which recovery could have been based. They pointed out that the mere possibility of future profits is not a right of property which the law recognizes and concludes [*sic*] that the only sound basis of recovery in those cases was a principle of protecting an inviolate personality, the right of privacy." See also Note (1959) 44 Iowa L. Rev. 705; Comment (1962) 7 Vill. L. Rev. 105; Comment (1937) 46 Yale L. J. 493, 500-503.

[2]Dean Prosser states in that article: "Other defenses have appeared only infrequently. Warren and Brandeis thought that the action for invasion of privacy must be subject to any privilege which would justify the publication of libel or slander, reasoning that that which is true should be no less privileged than that which is false. There is still no reason to doubt this conclusion, since the absolute privilege of a witness, and the qualified one to report the filing of a nominating petition for office or the pleadings in a civil suit have both been recognized."

of the designated documents, or either of them, in the course of judicial proceedings, the court did not err in sustaining the demurrer without leave to amend as to the first two counts of the second amended complaint.

The defendant Fairfield was not a party to the covenant not to sue as to which the plaintiff Hagan sought declaratory relief in the third count. Insofar as that covenant was relevant in other pending litigation between Mr. Hagan and Mr. Fairfield, any pertinent question as to the validity and effect of the covenant could be appropriately resolved therein. As stated in *Moss* v. *Moss,* 20 Cal.2d 640, at page 642 [128 P.2d 526, 141 A.L.R. 1422]: "Where facts appear from the face of the complaint which would justify a trial court in concluding that its determination is not necessary or proper, it has been held that the court may sustain a general demurrer to the complaint for declaratory relief. [Citations.]" (See also *Taliaferro* v. *Taliaferro,* 179 Cal.App.2d 787, 791 [4 Cal.Rptr. 689].)

But if the existence of pending litigation is not taken into consideration, the court did not err in sustaining the demurrer to the third cause of action inasmuch as the paragraph of that count quoted hereinabove is insufficient under the governing law. As stated in *Auberry Union School Dist.* v. *Rafferty,* 226 Cal.App.2d 599, at pages 602-603 [38 Cal.Rptr. 223]: "The decisions construing Code of Civil Procedure, sections 1060 and 1061, have held declaratory relief to be proper only where there is a justiciable controversy, as distinguished from a difference or dispute of a hypothetical or abstract character, from one that is academic or moot. (*Monahan* v. *Department of Water & Power* (1941) 48 Cal.App.2d 746, 750-751 [120 P.2d 730].) A party seeking declaratory relief must plead facts rather than conclusions of law and must show a controversy of concrete actuality as opposed to one which is merely academic or hypothetical."

There was no abuse of discretion on the part of the court in sustaining the demurrer without leave to amend.

The judgment is affirmed.

Shinn, P. J., and Kaus, J., concurred.

A petition for a rehearing was denied December 9, 1965.