[Civ. No. 25314. First Dist., Div. One. Feb. 6, 1970.]

CITY OF TIBURON, Plaintiff and Appellant, v.
NORTHWESTERN PACIFIC RAILROAD COMPANY et al.,
Defendants and Respondents.

## COUNSEL

Robert I. Conn and Richard H. Breiner for Plaintiff and Appellant.

Lawrence L. Howe, Landels, Ripley, Gregory & Diamond and Philip E. Diamond for Defendants and Respondents.

## OPINION

**SIMS, J.**—Plaintiff, City of Tiburon, a municipal corporation, has appealed from a judgment of dismissal of its action for declaratory relief, and from an order denying its motion to reconsider and for leave to file a supplementary and first amended complaint.[1] The order and judgment were both entered after the court had sustained without leave to amend the separate demurrers of the defendant Northwestern Pacific Railroad Company, as owner, lessor, optionor and grantor, and of the defendant Demaurex, as successor to the rights of a lessee, optionee and grantee from the railroad company of certain lands which the city alleged had been divided and subdivided in violation of state law and local ordinances.

The principal issue, as stated by the railroad, is whether the city's pleadings allege facts sufficient to show the existence of an actual and justiciable controversy with either of respondents, as distinguished from a controversy of either a moot, academic or hypothetical character. Other contentions raise the questions of (1) the propriety of granting either a prohibitory or mandatory injunction with respect to an alleged violation or threatened violation of the Subdivision Map Act (Bus. & Prof. Code, div. 4, pt. 2, ch. 2, § 11500 et seq.) or of an applicable local ordinance; (2) the existence and extent of the power of a municipality to control the division of land

---

[1]Neither the order sustaining the demurrer without leave to amend, nor the succeeding order which denied reconsideration and leave to file an amended complaint are appealable. (*Christensen* v. *Lucerne Holding Co.* (1933) 134 Cal.App. 215, 216 [25 P.2d 261]; 3 Witkin, Cal. Procedure (1954) Appeal, § 19, subd. (a) and § 26, pp. 2170 and 2171.) The propriety of these orders may be reviewed on the appeal from the judgment which was thereafter entered.

other than into a "subdivision" as defined by state law; (3) whether the city has an adequate remedy at law and, if so, whether that remedy precludes the granting of injunctive or declaratory relief; and (4) whether the granting of declaratory or injunctive relief would unwarrantedly involve the court in administrative processes.

It is concluded that the city has stated a cause of action entitling it to a declaration of the status of the lands referred to in the complaint; that the city's right to injunctive relief will, subject to the principles enunciated herein, depend upon the proof; that insofar as the court finds that land has been divided in violation of a local ordinance, as distinguished from the Subdivision Map Act, it should determine the validity of such ordinance; that the existence of criminal sanctions and the right to self-help does not preclude resort to an application for declaratory relief and such injunctive relief as may be appropriate; and that the determination of the question of the right to regulate as distinguished from the determination of the validity of the specific design and improvement to be imposed upon the subject lands, does not unwarrantedly involve the court in the administrative process.

### The facts pleaded

"Given the procedural posture of this case, we must accept as accurate the factual allegations of plaintiff's complaint. [Citations.]" (*Endler* v. *Schutzbank* (1968) 68 Cal.2d 162, 165 [65 Cal.Rptr. 297, 436 P.2d 297]. See also, *South Shore Land Co.* v. *Petersen* (1964) 226 Cal.App.2d 725, 732 [38 Cal.Rptr. 392]; and *Wilson* v. *Transit Authority* (1962) 199 Cal.App.2d 716, 721 [19 Cal.Rptr. 59].)

In *Wennerholm* v. *Stanford University School of Medicine* (1942) 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358], the court ruled, "Where a complaint is sufficient against a general demurrer, however, and any uncertainties or ambiguities in the pleading can be corrected by amendment, it is apparent that denial of leave to amend results in a disposition of the cause upon technical grounds alone. The plaintiff who has stated a cause of action in such a case is denied a trial on the merits of his action if any of the grounds of special demurrer is well taken, despite the fact that the deficiencies can be corrected. It has been held, under such circumstances, that denial of leave to amend constitutes an abuse of discretion even though it be conceded that the trial court had authority to sustain the special demurrer because of defects in the form of the pleading. [Citations.]" (20 Cal.2d 713, 718-719. See also, *Halsted* v. *County of Sacramento* (1966) 243 Cal.App.2d 584, 586 [52 Cal.Rptr. 637]; *Burt* v. *Irvine Co.* (1965)

237 Cal.App.2d 828, 848 [47 Cal.Rptr. 392]; and *C. Dudley De Vilbiss Co.* v. *Kraintz* (1951) 101 Cal.App.2d 612, 617 [255 P.2d 969].)

Application of the foregoing rule dictates that the allegations of the city's proposed amended complaint be considered as well as the averments found in the original complaint. (See, *Burt* v. *Irvine Co., supra,* 237 Cal. App.2d at p. 849.)

Each complaint sets forth the capacities of the parties, including the original lessee and optionee, Demaurex' predecessor, Tiburon Tidelands Co., a corporation, which, although named as a defendant in the action, is not a party to these proceedings. The city sets forth four ordinances it has adopted, commencing with and since its incorporation June 23, 1964, regulating the division of land within the city. The provisions of these ordinances, which are set forth at length as exhibits to the complaints, purport to embrace not only lands divided into subdivisions of five or more parcels as defined in the Subdivision Map Act (Bus. & Prof. Code, § 11535[2]), but also lands divided into any lesser number of parcels.

According to the allegations, on and before October 28, 1964, the railroad was the owner in fee of a single large parcel of real property containing approximately 49 acres more or less, including several acres of tidelands,

---

[2]At the time of the original transaction alleged, Business and Professions Code section 11535 read in pertinent part, as follows: "11535. (a) 'Subdivision' refers to any real property, improved or unimproved, or portion thereof, shown on the latest adopted county tax roll as a unit or as contiguous units, which is divided for the purpose of sale or lease, whether immediate or future, by any subdivider into five, or more parcels; . . . ." (Stats. 1963, ch. 1551, § 1, pp. 3136-3137.) The allegations of the complaint do not reveal that the transactions of which complaint has been made fall within the numerous exceptions contained in the statute, and it is unnecessary to review them at this stage of the proceedings. In 1965 (Stats. 1965, ch. 1180, § 7, p. 2981) the foregoing language was revised to read as it presently does to cover real property "divided for the purpose of sale, lease or *financing*." (Italics added.)

Section 11508 provided and provides: " 'Subdivider' refers to a person, firm, corporation, partnership or association who causes land to be divided into a subdivision for himself or for others."

Section 11525 reads: "Control of the design and improvement of subdivisions is vested in the governing bodies of cities and of counties. Every county and city shall adopt an ordinance regulating and controlling the design and improvement of subdivisions." (Similar language was found in the same section prior to the adoption of the present language in 1965 (Stats. 1965, ch. 1341, § 1, p. 3227).)

Section 11538 provided and provides: "(a) It is unlawful for any person to offer to sell or lease, to contract to sell or lease, or to sell or lease any subdivision or any part thereof until a final map thereof in full compliance with the provisions of this chapter and any local ordinance has been duly recorded or filed in the office of the recorder of the county in which any portion of the subdivision is located.

"(b) Subsection (a) does not apply to any parcel or parcels of a subdivision offered for sale or lease, contracted for sale or lease, or sold or leased in compliance with or exempt from any law (including a local ordinance), regulating the design and improvement of subdivisions in effect at the time the subdivision was established."

and over 1,000 feet of shoreline, and situated in the center of the downtown central waterfront district of the city. In the original complaint it was alleged that the real property owned by the railroad was shown on the latest adopted county tax roll as a unit or contiguous units (see § 11535, fn. 2 above). This allegation is not found in the proposed amended complaint, but that document is replete with allegations that the lease, option and conveyances hereinafter referred to violated the Subdivision Map Act.

Both complaints refer to a lease with an option to purchase from the railroad to the tidelands company dated October 28, 1964. The lease, a copy of which is attached to the original complaint, is for a term of one year from September 17, 1964. The land which is the subject of the lease and option is referred to in the lease as shown on an attached print. No print is attached to the filed copy, but each of the complaints alleges that the lease described the leased property by setting forth a legal metes and bounds description of five separate and distinct parcels of property. Copies of these descriptions were filed with the original complaint. The lease grants the lessee the right to purchase for one price three parcels designated on the print[3] (allegedly three of the parcels described), and if that option is exercised the further option to purchase for a further single price the remaining two parcels (also described in the exhibit to the complaint). In the original complaint it is alleged that these parcels had not theretofore been shown as separate units on the county or state tax rolls or public records.[4] In the amended complaint it is alleged that the five parcels referred to in the lease and described in the complaint comprise approximately 200,000 square feet of land, and include 1,000 feet of shoreline, and approximately 13 acres of tidelands.

It is further alleged on information and belief that on or about September 13, 1965, the lessee purported to sell and assign its rights, including those under the option, to the defendant Demaurex and some 20 fictitious defendants; that the lessee at the same time delivered five deeds to Demaurex and others covering each of the five parcels referred to in the lease, and notified the railroad of the exercise of the option; and that in April 1966 the railroad conveyed its interest in the five parcels, and Demaurex and others thereupon acquired title to those parcels.

---

[3]Section 11539 provides: "Conveyances of any part of a subdivision shall not be made by lot or block number, initial or other designation, unless and until a final map has been recorded." The applicability of this section has not been reviewed by the parties at this stage of the proceedings.

[4]It is noted that the lease refers to a prior lease-option agreement between the same parties dating back to 1958, which included the property the subject of the 1964 agreement. The question of whether there was a prior division of the property, and if so whether it was valid is not presented by the allegations of the complaint.

No application has ever been made to the city, nor has a permit of any type ever been issued for the division or subdivision of the lands referred to, either under the Subdivision Map Act, or under any of the city ordinances. It is alleged that each of the transactions—the lease-option, the transfer of rights, and the transfer of title—violates the state law and local ordinances; that each of the defendants had knowledge that the transactions were subject to such regulation and knowingly and wilfully disregarded the regulatory measures. In the proposed amended complaint it is alleged that the defendants conspired to evade the expense of complying with such design and improvements as might be required under the regulatory measures. From exhibits attached to the proposed amended complaint it appears that on February 10, 1966, the lessee filed an action against the railroad and its assignee for rescission of an assignment to Demaurex dated September 16, 1965; that on April 12, 1966, Demaurex, through his attorney, advised the railroad that he was insisting on receiving "good and sufficient Grant Deeds," one for each of the five parcels described in the agreement. and that the railroad would have to comply with "all City, County and State Laws and Ordinances relating to the conveyances . . .," noting that the city requires a permit for the conveyance of (really division into) two or more parcels; and that by declaration dated April 19, 1966, Demaurex' attorney represented to the court that Demaurex was the real party in interest in the question of determining the obligations of the railroad under the lease-option agreement, and that since Demaurex was insisting that the railroad comply with the applicable laws and ordinances there was no need for action by the court in the prior action commenced by the lessee. It is further alleged that the railroad represented to the city that it would comply with the applicable laws and ordinances before consummating the transaction; that the city relied on the representations of the railroad and Demaurex; and that the railroad and Demaurex nevertheless consummated the sale and conveyances without such compliance.

On or about September 26, 1966, Demaurex filed an application for a conditional use permit to make improvements on two of the five parcels of property and further applied for a permit to make use of two of the parcels for commercial purposes. The city refused to act on these applications. In the proposed amended complaint it is alleged that the city building code provides "that building permits shall issue only when all pertinent laws and ordinances have been complied with." The complaints fail to set forth the pertinent provisions of either the building code or the city zoning ordinance.

In the proposed amended complaint the city also alleged on information and belief that in January 1967 the railroad leased or offered to lease a portion of the lands remaining in its name to one Martinelli and others for

commercial purposes; that "Martinelli has applied to the City for a permit to improve the said property leased to him, or which railroad threatens to lease to him, as the case may be and to use said property for certain commercial purposes"; and that no permit has been applied for to subdivide the property remaining in the railroad's name after the conveyances under the lease option.

Throughout both complaints the city asserts that each of the transactions violates the state law and the local ordinances governing the subdivision and division of land; and that as a result of the first series of transactions the railroad's land was divided into five parcels held by Demaurex, aggregating approximately 18 acres, and a sixth parcel retained by the railroad of 31 acres.

The city alleges that controversies exist between the parties: first, as to whether any of the transactions violated the Subdivision Map Act, and, if so, with respect to the relief that should be granted the city; second, as to whether any of the transactions violated any of the city's ordinances, and, if so, with respect to the relief that should be granted the city; and, third, whether the city may refuse to issue building permits or use permits for the property in question until there has been compliance with the subdivision law and the ordinances. In its prayers the city seeks a declaration of the respective rights of the parties with respect to the foregoing issues.

Further allegations claim that the defendants' failure to comply with the law threatens great and irreparable harm to the city because proper provisions for streets, public rights of way, utilities, and the design of the land as divided may be forestalled by the acts of the defendants. In the proposed amended complaint it is more specifically alleged that the defendant railroad has leased or threatened to lease a further portion of the land to Martinelli, and that with respect to both the railroad and defendant Demaurex and his associates, the illegal division of the land "has resulted in the creation of, and the advertisement and offering to the public for sale of, illegal building sites by said defendants, and plaintiff City fears will continue to result in building sites being advertised for sale and offered to the public by said defendants Demaurex and Does I-XX that are not served by streets, sewers, water and other utilities, to the substantial and irreparable damage of the property owners in the immediate area, of the plaintiff City, and of the public generally."

On the basis of these allegations the city seeks to restrain the defendants "from offering to sell or lease, contracting to sell or lease, selling or leasing, or conveying directly or indirectly, by operation of law or otherwise, any or all of the said real property which is the subject of this suit, or any other real property owned by defendant railroad and located in the City of

Tiburon, unless and until the defendants, and each of them, have complied with the State Subdivision Map Act, and each and every ordinance of the City of Tiburon applicable to subdivisions and divisions of real property"; and an order that "defendants, and each of them, be directed and ordered forthwith to comply with the Subdivision Map Act, and each and every ordinance of the City applicable to the aforementioned transactions, and to fulfill all of said requirements of said applicable laws and regulations within a reasonable period of time."

*Sufficiency of the complaint*

■ "The following basic principle is . . . applicable to general demurrers, to wit: all that is necessary against a general demurrer is that upon a consideration of all the facts stated, it appears that the party whose pleading is attacked by such a demurrer is entitled to *any* relief at the hands of the court against his adversary, notwithstanding the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action or defense shown, or although the plaintiff, in his complaint, or the defendant, in his answer, may demand relief to which he is not entitled under the facts alleged. [Citation.]" (*South Shore Land Co.* v. *Petersen, supra,* 226 Cal.App.2d 725, 732-733. See also, *Wilson* v. *Transit Authority, supra,* 199 Cal.App.2d 716, 720.)

■ "It is the general rule that in an action for declaratory relief the complaint is sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a contract and requests that the rights and duties be adjudged. (Code Civ. Proc., § 1060.) If these requirements are met, the court must declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to a favorable declaration. (*Maguire* v. *Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 728 et seq. . . .)" (*Bennett* v. *Hibernia Bank* (1956) 47 Cal.2d 540, 549-550 [305 P.2d 20]. See also, *Columbia Pictures Corp.* v. *De Toth* (1945) 26 Cal.2d 753, 760 [161 P.2d 217, 162 A.L.R. 747]; *Rubin* v. *Toberman* (1964) 226 Cal.App.2d 319, 325 [38 Cal.Rptr. 32]; *Herrmann* v. *Fireman's Fund Ins. Co.* (1954) 127 Cal.App.2d 560, 566 [274 P.2d 501].)

■ "Declaratory relief is a broad remedy, and the rule that a complaint is to be liberally construed is particularly applicable to one for declaratory relief (*Foster* v. *Masters Pontiac Co.,* 158 Cal.App.2d 481 . . .)." (*Burke* v. *City etc. of San Francisco* (1968) 258 Cal.App.2d 32, 33-34 [65 Cal. Rptr. 539]. See also, *Wilson* v. *Transit Authority, supra,* 199 Cal.App.2d 716, 721.)

■ According to the allegations of the complaint the defendants have

proceeded to divide up lands, and threaten to divide up lands in violation of the provisions of state law and city ordinances with knowledge that such provisions regulate and prohibit such division in the absence of compliance with certain regulations. By their very actions they have taken the position, contrary to that asserted by the city, that the law and ordinances do not affect their properties. It is, therefore, apparent that a controversy exists.

The defendants, however, take a narrower view of what constitutes a justiciable controversy. They contend that even if it be assumed that the law was violated, there is no pending matter between the city, and either the railroad or Demaurex, and that it will be time enough to decide the respective rights and obligations of the city and of the landowners when some such matter is at issue and can be litigated. In *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536 [63 Cal. Rptr. 21, 432 P.2d 717], the court recognized the general rule governing exercise of judicial review as quoted in *Consolidated Vultee etc. Corp.* v. *United Auto. etc. Workers* (1946) 27 Cal.2d 859, 863 [167 P.2d 725], from *Mills* v. *Green* (1895) 159 U.S. 651, 653 [40 L.Ed. 293, 294, 16 S.Ct. 132], as follows: "[T]he duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." (67 Cal.2d at p. 541. See also, *Rowland School Dist.* v. *State Board of Education* (1968) 264 Cal. App.2d 589, 593-595 [70 Cal.Rptr. 504]; *Burke* v. *City etc. of San Francisco, supra,* 258 Cal.App.2d 32, 34; *Travers* v. *Louden* (1967) 254 Cal. App.2d 926, 932 [62 Cal.Rptr. 654]; *Hagan* v. *Fairfield* (1965) 238 Cal. App.2d 197, 202 [47 Cal.Rptr. 600]; *Auberry Union School Dist.* v. *Rafferty* (1964) 226 Cal.App.2d 599, 603 [38 Cal.Rptr. 223]; *Wilson* v. *Transit Authority, supra,* 199 Cal.App.2d 716, 722-726; and *Pittenger* v. *Home Sav. & Loan Assn.* (1958) 166 Cal.App.2d 32, 36 [332 P.2d 399].)

The railroad states that it has not applied for any building or use permit as to the Demaurex land, and in law would have no right to do so, and that the record does not show that the railroad has ever applied to the city for a permit to use or improve any part of its remaining land. Demaurex asserts that the failure of the city to act upon his applications to improve and use a portion of his property for commercial purposes does not create a pending controversy if he himself does not choose to press for action. Support for this view is found in *Auberry Union School Dist.* v. *Rafferty, supra,* 226 Cal.App.2d 599, wherein the court stated, "Where it is apparent that the defendant does not actually oppose the position taken by the plaintiff, there obviously can be no controversy and there is nothing to be determined by the court. [Citation.]" (226 Cal.App.2d at p. 603.)

The problem is not quite so simple. The allegations, particularly those found in the proposed amended complaint, set forth that the parties consummated the original purchase with knowledge of the alleged violations and as part of a plan to evade the legal requirements. Demaurex contends on appeal that he is not a subdivider within the meaning of the state law or city ordinances, and that the local ordinances cannot validly be applied to him. Even if these contentions are meritorious, they demonstrate that a controversy exists between him and the city as to the status of his lands. The legal issues involved cannot properly be disposed of by demurrer.[5]

Moreover it is alleged that each defendant threatens a further division of the land presently held in one ownership by either the railroad or Demaurex. Defendants claim that these allegations are mere conclusions of law which are not deemed admitted on demurrer. (See, *E. H. Renzel Co.* v. *Warehousemen's Union* (1940) 16 Cal.2d 369, 373 [106 P.2d 1]; *City of Alturas* v. *Gloster* (1940) 16 Cal.2d 46, 48 [104 P.2d 810]; *Hagan* v. *Fairfield, supra,* 238 Cal.App.2d 197, 202; *Burt* v. *Irvine Co., supra,* 237 Cal.App.2d 828, 849; *South Shore Land Co.* v. *Petersen, supra,* 226 Cal. App.2d 725, 732; *Auberry Union School Dist.* v. *Rafferty, supra,* 226 Cal.App.2d 599, 603; and *Thompson* v. *Purdy* (1931) 117 Cal.App. 565, 567 [4 P.2d 282].) The allegations that the railroad and Demaurex consummated the sale and conveyance of the property without attempting to comply with the regulatory measures, and that Demaurex has sought to develop portions of his property support the conclusions upon which the city relies. Moreover, although the actions of one Martinelli cannot bind the railroad, there is a strong inference that a prospective lessee would not seek permits from the city for the development of land without some encouragement from his prospective lessor.

If it be assumed that the city's contentions are correct and that it has the right to regulate the division and sale or lease of portions of the railroad's property, the threat, if carried out, would raise havoc with any plans which might be made for the development of the city. If the parcels created

---

[5]The practice of disposing of the substantive issues raised by a complaint for declaratory relief by demurrer and subsequent judgment of dismissal has received some sanction. (*Silver* v. *City of Los Angeles* (1963) 217 Cal.App.2d 134, 138 [31 Cal.Rptr. 545].) It appears, however, that the rule is one of appellate practice to the effect that a reversal will not be granted when it appears that no different result would be obtained by proceeding anew in a proper manner. (See, *Anderson* v. *Stansbury* (1952) 38 Cal.2d 707, 717 [242 P.2d 305]; and *Silver* v. *City of Los Angeles, supra,* 217 Cal.App.2d at p. 142.) If justiciable issues are presented which can be disposed of as a matter of law, they should be resolved by summary judgment with an express declaration of the rights of the parties. (See, *Anderson* v. *Stansbury, supra,* 38 Cal.2d 707, 717; *Auberry Union School Dist.* v. *Rafferty* (1964) 226 Cal.App.2d 599, 602 [38 Cal.Rptr. 223]; *Wilson* v. *Transit Authority* (1962) 199 Cal.App.2d 716, 721 [19 Cal.Rptr. 59]; and *Haley* v. *Los Angeles County Flood Control Dist.* (1959) 172 Cal.App.2d 285, 292-294 [342 P.2d 476].)

are conveyed to bona fide purchasers, there is, as developed below, a serious question of whether the city could exercise its power to control the design and improvement of lands divided within its territorial boundaries.

In *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind, supra,* following the passage quoted above, the court stated, ". . . the general rule governing mootness becomes subject to the case-recognized qualification that an appeal will not be dismissed where, despite the happening of the subsequent event, there remain material questions for the court's determination. This qualification or exception has been applied to actions for declaratory relief upon the ground that the court must do complete justice once jurisdiction has been assumed [citation], and the relief thus granted may encompass future and contingent legal rights." (67 Cal.2d at p. 541, fn. omitted. See also, *Rubin* v. *Toberman, supra,* 226 Cal.App.2d 319, 325.)

■ "The purpose of a declaratory judgment is 'to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation.' (*New York Foreign Trade Z. Operators* v. *State Liquor A.,* 285 N.Y. 272 . . .) To hold that a plaintiff on the wrong side of a controversy is not entitled to the security and relief against uncertainty which a declaratory judgment affords would require us to read into the statute a limitation not there present." (*Maguire* v. *Hibernia Sav. & Loan Soc.* (1944) 23 Cal.2d 719, 729-730 [146 P.2d 673, 151 A.L.R. 1062]. See also, *Chas. L. Harney, Inc.* v. *Contractors' etc. Board* (1952) 39 Cal.2d 561, 564 [247 P.2d 913]; *Burke* v. *City etc. of San Francisco, supra,* 258 Cal.App.2d 32, 34; *Travers* v. *Louden, supra,* 254 Cal.App.2d 926, 931; *Rubin* v. *Toberman, supra,* 226 Cal.App.2d 319, 326; *Wilson* v. *Transit Authority, supra,* 199 Cal.App.2d 716, 722; *Haley* v. *Los Angeles County Flood Control Dist., supra,* 172 Cal.App.2d 285, 294; and *Herrmann* v. *Fireman's Fund Ins. Co., supra,* 127 Cal.App.2d 560, 565.)

Here there is unquestionably an uncertain and disputed jural relation. Whether the city is wrong or right is not the question. Both the property owner and the city are entitled to know their present rights and obligations with respect to the property allegedly illegally divided. ■ "Where . . . a case is properly before the trial court, under a complaint which is legally sufficient and sets forth facts and circumstances showing that a declaratory adjudication is entirely appropriate, the trial court may not properly refuse to assume jurisdiction; and if it does enter a dismissal, it will be directed by an appellate tribunal to entertain the action. Declaratory relief must be granted when the facts justifying that course are sufficiently alleged." (*Columbia Pictures Corp.* v. *De Toth, supra,* 26 Cal.2d 753, 762. See also, *Chas. L. Harney, Inc.* v. *Contractors' etc. Board, supra,* 39 Cal.2d 561, 565;

*Maguire* v. *Hibernia Sav. & Loan Soc., supra,* 23 Cal.2d 719, 737; *Foster* v. *Masters Pontiac Co.* (1958) 158 Cal.App.2d 481, 486-487 [322 P.2d 592]; *Sattinger* v. *Newbauer* (1954) 123 Cal.App.2d 365, 369-370 [266 P.2d 586]; and *Sullivan* v. *San Francisco Art Assn.* (1950) 101 Cal. App.2d 449, 456 [225 P.2d 993].)

*Inadequacy of other remedies*

Respondents urge that the lower court's ruling should be upheld as a proper exercise of its discretion. "The sustaining of the demurrer on the ground that the plaintiff has a speedy and adequate remedy other than by means of declaratory relief under section 1060 of the Code of Civil Procedure was discretionary on the part of the court under the circumstances alleged in the complaint, which precludes this court from interfering with that order, except for an abuse of discretion. (Sec. 1061, Code Civ. Proc.; . . .) Section 1061 of the Code of Civil Procedure provides in that regard:

" 'The court may *refuse to exercise the power* granted by this chapter *in any case where its declaration or determination is not necessary* or proper at the time under all the circumstances.' (Italics ours.)" (*City of Alturas* v. *Gloster, supra,* 16 Cal.2d 46, 49. See also, *Holden* v. *Arnebergh* (1968) 265 Cal.App.2d 87, 91-92 [71 Cal.Rptr. 401]; *Travers* v. *Louden, supra,* 254 Cal.App.2d 926, 932; *Escrow Owners Assn. Inc.* v. *Taft Allen, Inc.* (1967) 252 Cal.App.2d 506, 509-510 [60 Cal.Rptr. 755]; *Hagan* v. *Fairchild, supra,* 238 Cal.App.2d 197, 202; *Auberry Union School Dist.* v. *Rafferty, supra,* 226 Cal.App.2d 599, 602; *Silver* v. *City of Los Angeles* (1963) 217 Cal.App.2d 134, 142 [31 Cal.Rptr. 545]; *Taliaferro* v. *Taliaferro* (1959) 171 Cal.App.2d 1, 7-8 [339 P.2d 594]; and *Oppenheimer* v. *General Cable Corp.* (1956) 143 Cal.App.2d 293, 297 [300 P.2d 151].)

The Subdivision Map Act declares that the sale or lease of any subdivision or any part thereof is illegal. (§ 11538, fn. 2 above.) It further provides for the avoidance by the buyer of a sale of property made in violation of the act (§ 11540[6]), and it makes a violation a misdemeanor subject to fine and imprisonment (§ 11541[7]). It further expressly recognizes the

[6]Section 11540 provides: "Any deed or conveyance, sale or contract to sell made contrary to the provisions of this chapter is voidable at the sole option of the grantee, buyer or person contracting to purchase, his heirs, personal representative, or trustee in insolvency or bankruptcy within one year after the date of execution of the deed of conveyance, sale or contract to sell, but the deed of conveyance, sale or contract to sell is binding upon any assignee or transferee of the grantee, buyer or person contracting to purchase, other than those above enumerated, and upon the grantor, vendor, or person contracting to sell, or his assignee, heir or devisee."

[7]Section 11541 reads: "Any offer to sell, contract to sell, sale, or deed of conveyance made contrary to the provisions of this chapter is a misdemeanor, and any person, firm or corporation, upon conviction thereof, shall be punishable by a fine

right of a municipality to enforce the provisions of the act by other legal, equitable or summary remedies (§ 11542[8]). Similar provisions are found in the city ordinances.

The railroad urges that the criminal sanctions are not illusory. It points out that if a conspiracy to avoid the act were established, the conspirators could be liable to a $5,000 fine and three years imprisonment (see Pen. Code, § 182). ■ It is unnecessary to weigh the effect of such a penalty against the costs of designing and improving a subdivision to the standards required by the local ordinances. The purpose of subdivision control is to provide for the general welfare of the purchasers of the divided lands and the community in general. In *Pratt v. Adams* (1964) 229 Cal.App.2d 602 [40 Cal.Rptr. 505], the court observed, "The Subdivision Map Act and the ordinances passed in conformity with it have several salutary purposes, such as: to regulate and control the design and improvement of subdivisions, with proper consideration for their relation to adjoining areas [citations]; to require subdivider to install streets [citations]; to require subdivider to install drains [citation]; to prevent fraud and exploitation [citations]; and to protect both public and purchaser [citations]." (229 Cal. App.2d at pp. 605-606. See also, *Ayres v. City Council of Los Angeles* (1949) 34 Cal.2d 31, 42 [207 P.2d 1, 11 A.L.R.2d 503]; *Santa Clara County Contractors etc. Assn. v. City of Santa Clara* (1965) 232 Cal. App.2d 564, 572-573 [43 Cal.Rptr. 86]; *Newport Bldg. Corp. v. City of Santa Ana* (1962) 210 Cal.App.2d 771, 776 [26 Cal.Rptr. 797]; *County of San Mateo v. Palomar Holding Co.* (1962) 208 Cal.App.2d 194, 202 [24 Cal.Rptr. 905]; *City of Buena Park v. Boyar* (1960) 186 Cal.App.2d 61, 67 [8 Cal.Rptr. 674]; *Kelber v. City of Upland* (1957) 155 Cal.App.2d 631, 638 [318 P.2d 561]; and *Hoover v. County of Kern* (1953) 118 Cal. App.2d 139, 142 [257 P.2d 492].)

A similar contention made in opposition to a municipality's suit to restrain a violation of a zoning ordinance has been answered as follows: "We are not reluctant to say, however, that, even if the ordinance itself expressly prescribed a penalty for the violation of its terms, we would still be firmly of the conviction that thus there would not be afforded an adequate

---

of not less than twenty-five dollars ($25) and not more than five hundred dollars ($500), or imprisonment in the county jail for a period of not more than six months, or by both such fine and imprisonment."

[8]Section 11542 provides: "This chapter does not bar any legal, equitable, or summary remedy to which any aggrieved municipality or other political subdivision, or any person, firm or corporation may otherwise be entitled, and any such municipality or other political subdivision or person, firm or corporation may file a suit in the superior court of the county in which any property attempted to be subdivided or sold in violation of this chapter is located, to restrain or enjoin any attempted or proposed subdivision or sale in violation of this chapter."

remedy at law to prevent the commission of acts prohibited thereby. The obvious object of the ordinance is to promote and preserve the comforts of home life as against interference by the ceaseless humdrum, confusion, and other discomforting elements essentially characteristic of the business marts, as well as against the invasion of duly established residential districts by industrial enterprises which, although in themselves legitimate and necessary, would, from their very inherent nature, operate as a positive menace to the peace, comfort, and, in some instances, the health of the inhabitants of such district, and also to the serious detriment of their property rights. It is perfectly clear that any remedy short of one having the force and effect practically of stalling a violation of the ordinance before the infliction of the mischief which it is its paramount purpose to prevent, or of forcing a removal of the cause of the damage after it has been done, would render the measure utterly impotent for the achievement of the ends of its adoption and passage. To be compelled, in a case such as this, to rely for relief upon the uncertain results of the trial of a criminal case, with the usual delays occasioned by appeals, etc., would not, it is very certain, afford that speedy and adequate remedy which the nature and the object of the ordinance involved herein, would, in justness, demand, in the case of a violation of its provisions. Furthermore, the imposition of a penalty upon a violator of an ordinance, even though it be by imprisonment (which could be under a municipal ordinance nothing higher than as for a misdemeanor) would not itself have the effect of removing the prohibited building or necessarily to stop the inhibited business." (*City of Stockton* v. *Frisbie & Latta* (1928) 93 Cal.App. 277, 285-286 [270 P. 270]. See also, *Donovan* v. *City of Santa Monica* (1948) 88 Cal.App.2d 386, 397 [199 P.2d 51].) ■ So here, to license the indiscriminate division of land by the imposition of criminal penalties would not serve to preserve the orderly development of the city.

Both respondents urge that the city by using self-help, as it has, in the enforcement of its building and zoning ordinances, retains sufficient control over the situation. In *Pratt* v. *Adams, supra,* the city successfully resisted the attempt of landowners to secure building permits for the improvement of parcels which were found to have been created by an illegal division of property. The court concluded: "This is not a case in which a building permit has been denied because of some old violation of subdivision laws, possibly done by predecessors in title to the applicant; it is a case where the permit is sought as the culmination of a plan to circumvent the law by one of the planners. The courts will not assist, by equitable process, the fulfillment of this plan." (229 Cal.App.2d at p. 606. See also, *Roney* v. *Board of Supervisors* (1956) 138 Cal.App.2d 740, 743 [292 P.2d 529], and note *Hocking* v. *Title Ins. & Trust Co.* (1951) 37 Cal.2d 644 [234

P.2d 625, 40 A.L.R.2d 1238], where similar action, see 37 Cal.2d at p. 647, fn. 4 and accompanying text, led to the principal action.)

The limitations expressed in the rule in *Pratt* disclose the inadequacy of the weapon of future control. In *Munns* v. *Stenman* (1957) 152 Cal. App.2d 543 [314 P.2d 67], the court upheld the grant of a writ ordering the issuance of a building permit to landowners who had no knowledge of and did not participate in the alleged illegal sale and transfer of other parcels. The court concluded, "The subdivision statutes and ordinances prescribe penalties for violation of their requirements. None of them suggests that an innocent third party may be deprived of the use of his property because he buys into an illegally subdivided tract. Section 11541, Business and Professions Code, makes violation of the act a misdemeanor. Section 11542 authorizes a suit at the instance of the municipality to enjoin any proposed subdivision or sale in violation of the statute. Section 11540 renders voidable, at the option of the buyer, any contract, sale or deed made contrary to the statute. This law having been made for the protection of a class to which he belongs the purchaser is not *in pari delicto* and may recover his money if so advised. [Citations.] If it were a fact that Hidden Valley was subdivided in a manner contrary to statute or ordinance, that would not afford basis for the city's refusal to permit the owner of a lot therein to beneficially enjoy it by constructing a residence." (152 Cal. App.2d at pp. 554-555. Cf. *McCombs* v. *Larson* (1959) 176 Cal.App.2d 105, 107-109 [1 Cal.Rptr. 140]; and note *Keizer* v. *Adams* (1969) (Cal. App.) 81 Cal.Rptr. 484, hearing in Supreme Court granted December 17, 1969.*

■ The remedies suggested by respondents do not justify a refusal to exercise the power to grant declaratory relief under the discretion conferred by the provisions of section 1061 of the Code of Civil Procedure. In *Maguire* v. *Hibernia Sav. & Loan Soc., supra,* the court noted, "While some authorities limit a trial court's discretion to refuse to make a declaration on the ground that other remedies are available to cases where special statutory proceedings have been provided for the particular type of case or where other remedies would afford more effective relief [citations], all agree that before a court may properly exercise its discretion to refuse relief on that ground, it must clearly appear that the asserted alternative remedies are available to the plaintiff and that they are speedy and adequate or as well suited to the plaintiff's needs as declaratory relief. [Citations.]" (23 Cal.2d at p. 732. See also, *Columbia Pictures* v. *De Toth, supra,* 26 Cal.2d 753, 761; and *Herrmann* v. *Fireman's Fund Ins. Co., supra,* 127 Cal.App.2d 560, 566.)

---

*The opinion of the Supreme Court is reported in 2 Cal.3d 976 [88 Cal.Rptr. 183, 471 P.2d 983].

*Right to injunctive relief*

▮▮▮ The right to injunctive relief will depend upon the facts adduced at the trial. There is ample precedent for a prohibitory injunction against the threat to use land in a manner contrary to law. In *City of Stockton* v. *Frisbie & Latta, supra,* the court reversed a judgment which had been entered after a demurrer was sustained without leave to amend to the city's complaint to enjoin a violation of a zoning ordinance. The court ruled, ". . . it is thoroughly established that a municipal corporation or a county or a township may, in certain instances, by direct action on its part, invoke an appropriate civil remedy to coerce obedience to the mandates of its ordinances or regulations adopted in the exercise of the police power as expressly granted to it by the constitution. (Art. XI, sec. 11, Const.) . . . [W]here the personal welfare and the property rights of a large number of the inhabitants of a city or town would be detrimentally affected by a violation of a police or sanitary regulation, whether the ordinance provides other means for its enforcement or not, such city or town may itself appeal to a court of equity by means of the forceful and singularly effective writ of injunction (preventive, if the violation is merely threatened or attempted —mandatory, if the violation has already occurred) to restrain such violation or to cause the wrongful effect thereof to be removed." (93 Cal.App. at pp. 289-290. See also, *City etc. of San Francisco* v. *Burton* (1962) 201 Cal.App.2d 749, 756-757 [20 Cal.Rptr. 378]; *People* v. *Johnson* (1954) 129 Cal.App.2d 1, 8-9 [277 P.2d 45]; *Donovan* v. *City of Santa Monica, supra,* 88 Cal.App.2d 386, 397; *Cooper* v. *County of Los Angeles* (1946) 75 Cal.App.2d 75, 79 [170 P.2d 49]; *City of San Mateo* v. *Hardy* (1944) 64 Cal.App.2d 794, 797 [149 P.2d 307]; *City of Yuba City* v. *Cherniavsky* (1931) 117 Cal.App. 568, 573 [4 P.2d 299]; and *County of San Diego* v. *McClurken* (1951) 37 Cal.2d 683 [234 P.2d 972].)

In *County of San Mateo* v. *Palomar Holding Co., supra,* the court upheld a judgment enjoining the defendants from dividing and transferring any real property owned by them unless such divisions were first approved in accordance with certain county ordinances. The court noted, "The trial court found in accordance with the allegations of the complaint that, since the adoption of ordinance number 977, the defendants had repeatedly divided and transferred parcels of land in the Palomar Park area owned by them without submitting a plat of the proposed division to the planning director or the planning commission and without having received the approval of the planning director or of any other county official, board or commission. It found that the division of said parcels of land without the approval of the county has resulted and will result in building sites being offered to the public that are not adequately served by streets, sewers, water and other utilities, to the substantial damage of property owners in the

immediate area and of the public generally. Further, finding that defendants would continue to violate the provisions of ordinance number 595, as amended by ordinance number 977, unless restrained from doing so, the court concluded that the county was entitled to the injunction prayed for, and entered judgment accordingly." (208 Cal.App.2d at p. 196.)

 "Injunction 'is an extraordinary power, and is to be exercised always with great caution and in those cases only where it fairly appears "upon all the papers presented, before such injunction is granted, that the plaintiff will suffer irreparable injury if it be not issued, or that it is necessary to preserve the estates of the parties, or some sufficient cause showing that need of hasty action exists." (Joyce on Injunctions, § 109.)
 The power, therefore, should rarely, if ever, be exercised in a doubtful case. "The right must be clear, the injury impending and threatened, so as to be averted only by the protective preventive process of injunction." ' (*Schwartz* v. *Arata,* 45 Cal.App. 596, 601 . . .)" (*City & County of San Francisco* v. *Market Street Ry. Co.* (1950) 95 Cal.App.2d 648, 655 [213 P.2d 780]. See also, *Rowland School Dist.* v. *State Board of Education, supra,* 264 Cal.App.2d 589, 596; and *McRae* v. *Superior Court* (1963) 221 Cal.App.2d 166, 173 [34 Cal.Rptr. 346, 98 A.L.R.2d 1239].)
 Nevertheless, if the city offers proof to sustain the allegations of the complaint which fall within the precedents first noted in this title it will be entitled to injunctive relief.

 There are limits to the extent to which the court can grant a mandatory injunction to undo the transactions already completed. Section 11542 (fn. 8 above) expressly reserves to the city the right to seek equitable relief in the event of the violation of, or an attempt to violate, the Subdivision Map Act. Section 11540 (fn. 6, *supra*) gives the grantee the sole option to avoid a conveyance made contrary to the provisions of that law for a period of one year after the conveyance. The railroad suggests that the provisions of the latter section indicate that the courts cannot "unwind the transaction" by ordering a reconveyance at the instance of anyone other than the grantor. Furthermore, it asserts that the power to issue a mandatory injunction to enforce the provisions of the act cannot be exercised in the absence of an express statutory authorization. (See, *People* v. *Paramount Citrus Assn.* (1957) 147 Cal.App.2d 399, 411-412 [305 P.2d 135]; but cf. *People* v. *Coit Ranch, Inc.* (1962) 204 Cal.App.2d 52, 60-62 [21 Cal. Rptr. 875].)

It is unnecessary to pursue the applicability of the foregoing contentions to the facts pleaded in this case. In *Hocking* v. *Title Ins. & Trust Co., supra,* the plaintiff claimed a defect in her title because she could not get a building permit for her lots which were part of a recorded subdivision in which the subdivider had failed to complete the ordered improvements or give a bond

therefor prior to recordation as required by law (see § 11626). The court concluded, "Although it is unfortunate the plaintiff has been unable to use her lots for the building purposes she contemplated, it is our view that the facts which she pleads do not affect the marketability of her *title* to the land, but merely impair the market *value* of the property." (37 Cal.2d at p. 652.) In *Hocking* the map was in fact, albeit erroneously, recorded and gave validity to the transaction. So here if the conveyances appear regular on their face they may serve to pass title.

In *Clemons* v. *City of Los Angeles* (1950) 36 Cal.2d 95 [222 P.2d 439], the plaintiff had subdivided a bungalow court on one lot into nine separate parcels by conveying away eight parcels, all which were of a size smaller than that permitted by the city zoning ordinance. When threatened with prosecution he commenced an action for declaratory relief. The trial court held that the conveyances were null and void. In response to plaintiff's attack on this finding, the court on appeal found that the transactions were voidable not void, but that there was no prejudicial error because so far as appeared from the record all the grantees concerned were parties to the action and had sought to be relieved. So far as is pertinent here, the court observed, "We may assume, without deciding, that ordinarily a city has no power to legislate concerning the validity of transfers of title to real property . . . . In this connection it may be observed that the ordinary municipal zoning ordinance is concerned only with the regulation of the use of land as distinguished from the ownership thereof. But in the present case, the state legislation embraced in the Subdivision Map Act (Stats. 1937, p. 1864, as amended, now Bus. & Prof. Code, §§ 11500 et seq.) dealt with the subject of transfers of ownership and the validity of transfers made in violation of its terms (Bus. & Prof. Code, § 11540), and it expressly empowered the cities to supplement that act in the manner provided by the section of the ordinance under attack. (Bus. & Prof. Code, §§ 11510, 11525.) The only reasonable conclusion to be drawn from a reading of the state act and the municipal ordinance is that the state intended by its legislation to empower the cities to impose the same civil sanctions for violations of supplementary municipal ordinances as those found in the Subdivision Map Act, and that the city here intended, by the enactment of its ordinance, to exercise the power so conferred. Under these circumstances, it is immaterial that the ordinance did not expressly declare the title consequences of a violation of the terms of said section 12.21-C. (*Smith* v. *Bach,* 183 Cal. 259, 262-264 . . .) We conclude that plaintiff's transactions in violation of the ordinance were not void *ab initio* but were voidable at the option of the other parties to said transactions as provided in the state act. (Bus. & Prof. Code, § 11540.)" (36 Cal.2d at p. 105.

See also, § 11540.1[9]; note also, *Rubin* v. *Fuchs* (1969) *(Cal.App.) 77 Cal.Rptr. 682.)

 It is concluded that the city is not entitled to an order setting the conveyances aside, and changing the recorded title to the land. This is not to say, however, that it is not, upon proper proof, entitled to a prohibitory injunction against either or both defendants to prevent the further conveyance of all but the entire parcel originally held by the railroad until the owners have complied with applicable regulatory measures.

## Validity of the local ordinances

The question of the validity of the local ordinances is twofold. First, may the city regulate the division of land when it results in less than the five parcels which would make the subdivision subject to the Subdivision Map Act, or when it is divided, regardless of the number of parcels, for purposes other than those contemplated by that act? Secondly, if so, are the particular regulations valid?

Neither of these questions will arise if it is determined that five or more parcels were in fact created. On the other hand, the railroad contends that the use of five descriptions is not conclusive, that there was but one parcel which was the subject of the lease, the option as exercised and the five deeds, and that since the property all went to one grantee, there was at best a division into two parcels. Moreover, the option itself divided the five described parcels into two groups, suggesting a total division of three parcels. Demaurex' application for use and improvements may also involve less than a division into five parcels. No opinion is expressed as to the true nature of the transactions. The complexities of the situation indicate that the true intention of the parties should be determined from the documents used and such other evidence as may be offered on that subject. These complexities do further demonstrate the need for a declaration of the status of the lands at this time.

---

[9]"Nothing in this chapter prevents the governing body of any municipality or county from regulating the division of land which is not a subdivision, *provided that such regulations are not more restrictive than the requirements for a subdivision.* The validity of any conveyance, as defined in Section 1215 of the Civil Code, made contrary to the provisions of any ordinance prescribing the area or dimensions of lots or parcels, or prohibiting the reduction in area or the separation in ownership of land, or requiring the filing of a map of any land to be divided, shall not be affected, except that any such ordinance may provide that any deed of conveyance, sale or contract to sell made contrary to the provisions of such ordinance is voidable to the extent and in the same manner provided in Section 11540." (The italicized language was added by Stats. 1965, ch. 1180, p. 2980, effective September 17, 1965.)

*A hearing was granted by the Supreme Court on July 9, 1969. The final opinion of that court is reported in 1 Cal.3d 50 [81 Cal.Rptr. 373, 459 P.2d 925].

In these proceedings concern is limited to the question of the city's right to regulate. If it is answered affirmatively and the ordinances or any of them apply to any of the defendants, the validity of the regulations cannot be determined until the landowner submits to the city's jurisdiction and ascertains what conditions the city will actually impose. (See, *County of San Mateo* v. *Palomar Holding Co., supra,* 208 Cal.App.2d 194, 201-202.)

■ As a general proposition, "The authority to adopt local ordinances containing requirements supplementary to the Map Act is limited by the terms of the statute." (*Santa Clara County Contractors etc. Assn.* v. *City of Santa Clara* (1965) 232 Cal.App.2d 564, 572-573 [43 Cal.Rptr. 86]. See also, *Newport Bldg. Corp.* v. *City of Santa Ana* (1962) 210 Cal.App.2d 771, 776 [26 Cal.Rptr. 797]; and *Kelber* v. *City of Upland, supra,* 155 Cal.App.2d 631, 636-638.) ■ The railroad contends that the state has preempted the field of the regulation of the division of land, and that the city therefore cannot regulate a division of not less than five parcels.

The railroad misreads section 11540.1 (fn. 9 above) which expressly provides: "Nothing in this chapter prevents the governing body of any municipality or county from regulating the division of land which is not a subdivision, . . ." It is recognized that this section reserves to local authorities the right to regulate the division of land into less than five parcels. (See, *County of San Mateo* v. *Palomar Holding Co., supra,* 208 Cal.App.2d 194, 199, fn. 1.) It may be assumed that the restriction, adopted in 1965 and reading "provided that such regulations are not more restrictive than the requirements for a subdivision," is declaratory of the prior law and that the Legislature did not previously intend that a local governing body could discriminate against divisions of property which were not regulated under state law.

Demaurex, in reliance on the proviso last referred to, contends that ordinances number 32 and 51 which the city adopted March 23, 1965 and April 11, 1966, respectively, violate this principle because they purport to regulate a division of land not only for "sale" or "lease" (and since 1967 "financing"), as provided in section 11535 (fn. 2 above), but also "for any other purpose" (Ord. No. 32) and "separate use" (Ord. No. 51). ■ Section 11540.1 refers to "the division of land which is not a subdivision" and does not impose any restrictions on the purpose of the division, nor does it relate to the number of lots created. If there is a division of land which is not covered by the state act, be it for less than five parcels, or for more than five parcels for a purpose not yet contemplated by the Legislature, the local authority may regulate. It cannot, however, impose conditions or requirements on the landowner with respect to design and improvements

which are more onerous than those imposed on landowners whose division of property falls within the definition of the state act.

No attempt has been made to analyze the terms of the respective ordinances other than as outlined above, and nothing herein contained should preclude the landowners from showing that any ordinance found applicable to a transaction in which he was involved is invalid because of defects not urged on this appeal.

 "The Declaratory Relief Act does not purport to confer upon courts the authority to control administrative discretion. [Citations.]" (*Wilson* v. *Transit Authority, supra,* 199 Cal.App.2d 716, 725. See also, *Auberry Union School Dist.* v. *Rafferty, supra,* 226 Cal.App.2d 599, 603.) The learned trial judge observed, "Basically what plaintiff is seeking by its request for declaratory relief as far as present or future controversies is concerned is a determination by the court of under what circumstance it must issue or may properly deny subdivision and building permits. If plaintiff's theory were carried to its logical conclusion the declaratory relief procedure would become a means whereby planning and zoning matters would flood the courts seeking some sort of advance determination, notwithstanding the fact that these matters involve considerations which require the expertise and exercise of discretion by administrative bodies in areas over which the courts have no control. The courts must necessarily concern themselves only with insuring that the required legal formalities have been observed and preventing arbitrary action or inaction on the part of the administrative agencies."

This analysis overshoots the mark. The question here is not one of attempting to determine the specific conditions and requirements to which the defendants may be subjected in the development of their property, but one of ascertaining the present status of the property involved. The following is pertinent, "Since the present case arises on demurrer, any attempt at this time to formulate a specific procedural arrangement for the vindication of plaintiff's rights would obviously be premature.[Fn.]" (*Endler* v. *Schutzbank, supra,* 68 Cal.2d at p. 182.) In the footnote the court observed, "The trial court will be in a better position to prescribe a combination of mandatory and preventative relief which will assure that the interests of all concerned receive adequate protection."

*Conclusion*

In short, the allegations reflect a controversy involving, first, the status of the parcels conveyed by the railroad and allegedly standing of record in the name of Demaurex, and, second, the status of the lands retained by the railroad. The determination of that status depends on resolution of the

following questions, among others, raised by the pleadings and exhibits: were the parcels specified in the lease and option to purchase created in violation of the Subdivision Map Act or any local ordinances; did the exercise of the option and the ensuing conveyances constitute a violation of any applicable laws or ordinances; is Demaurex a bona fide purchaser, or did he take the lands in violation of any applicable laws or ordinances; and, if applicable, are the local ordinances valid?

To assert that the relief sought by the city is an attempt to delegate to the court the control of the improvement and design of the subdivision, is to confuse the right to control with the manner in which such control shall be exercised. The city seeks a determination of the status of the property so that it will not unwarrantedly deny the landowners such permits or uses as they may seek, and to insure that its proper regulatory powers will not be dissipated by conveyances to bona fide purchasers taking in ignorance of the status of prior holdings.

This is not an unwarranted attempt to seize an innocent landowner by his heels to drag him into court to test the validity of the city's regulatory powers. The situation has been created by the action of the railroad and Demaurex in purporting to establish several parcels out of what was allegedly one holding. Demaurex allegedly has applied for permits to develop two of the five stated parcels. The railroad allegedly is a party to proceedings to develop a sixth parcel. The failure of respondents to pursue any other remedies when the city exercised its alleged right to self-help by refusing to hear and act on the applications does not remove the controversy. Both the railroad and Demaurex acknowledge that either could test the validity of the city's nonaction in appropriate proceedings. Conversely, the city should have the right to determine the status of the property to the end that the propriety of its refusal to act on other applications may be established or refuted, and so that future grantees of the property may not claim interests which would cut off the city's proper regulatory powers. In *Maguire* v. *Hibernia Sav. & Loan Soc., supra,* the court observed, "A controversy regarding the status of one claiming membership in a corporation is a proper subject of a declaratory judgment [citations], and the nature of the controversy is essentially the same whether it is presented by the claimant or by the corporation. [Citation.] We are of the opinion that the propriety or necessity for declaratory relief in this case is not dependent upon which party to the controversy seeks judicial aid." (23 Cal.2d at p. 731.)

The respondents are exercising good military strategy in seeking to determine the time, terms and place in which they will do battle with the city. Since it appears that a delay in the contest may permit circumstances to develop which would further dissipate whatever strength the city may have,

it would be unfair to deprive the city of an opportunity to test its arms under the existing circumstances, which, it should be remembered, were created, not by the city, but by the transactions between the railroad, its lessee, and the latter's successor. If, as asserted by respondents, there is no present controversy concerning the status of the land, the railroad and Demaurex could avoid further litigation and expense by stipulating to a decree that the legal title to the original lands of the railroad is held severally by the railroad and Demaurex, but in one parcel subject to development only under the applicable provisions of the Subdivision Map Act and pertinent local ordinances as administered by the appropriate agencies of the city. The contentions advanced by the respondents on appeal, demonstrate that such a proposition is unacceptable and that a genuine controversy exists as to the status of the lands in question. Without a resolution of this controversy it may be impossible for the city to make intelligent plans for the ultimate design and improvement of the lands under its jurisdiction.

The judgment is reversed, the order denying leave to file an amended complaint is set aside, and the case is remanded with instructions to file the amended complaint with leave to respondents to specially demur, or make such motions as they may be advised in connection therewith within 30 days after the remittitur is filed below.

Molinari, P. J., and Elkington, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 1, 1970.