Filed 9/30/20  P. v. Sanchez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072907 |
| v. | (Super.Ct.No. RIF1702630) |
| MAURILIO MONTERO SANCHEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Samuel Diaz, Jr. and Timothy J. Hollenhorst, Judges.  Affirmed.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Annie Featherman Fraser, Deputy Attorneys General, for Plaintiff and Respondent.

With Judge Samuel Diaz presiding, a jury found defendant and appellant Maurilio Montero Sanchez guilty of (1) intimidating a witness by force or threat of

1

violence (Penal Code, § 136.1, subd. (c)(1))[1]; (2) willfully inflicting corporal injury upon a cohabitant (§ 273.5, subd. (a)); and (3) making a criminal threat (§ 422).  The jury was unable to reach a verdict on the charge of attempted murder (§§ 664, 187, subd. (a)), and Judge Diaz declared a mistrial as to that count.

At a second trial, with Judge Timothy J. Hollenhorst presiding, a second jury found defendant guilty of attempted murder.  (§§ 664, 187, subd. (a).)  The second jury found true the allegations that (A) the attempted murder was willful, deliberate, and premeditated; and (B) defendant used a deadly or dangerous weapon during the crime (§§ 12022, subd. (b)(1), 1192.7, subd. (c)(23)).  Judge Hollenhorst sentenced defendant to prison for a determinate term of eight years eight months, and a consecutive indeterminate term of seven years to life.

Defendant raises four issues on appeal.  First, defendant contends substantial evidence does not support the causation element in his criminal threat conviction (§ 422).  Second, defendant contends that, due to mistakes in the probation report, the trial court erred in applying section 654.  Third, within a single point heading, defendant contends (a) the criminal threat statute does not encompass his offense; (b) substantial evidence does not support the intent finding for the criminal threat conviction; and (c) his right of equal protection was violated by the criminal threat conviction (§ 422).  Fourth, defendant contends the trial court mistakenly believed a consecutive prison term was mandatory for the intimidation conviction.  We affirm the judgment.

---

[1] All subsequent statutory references will be to the Penal Code unless otherwise indicated.

2

## FACTUAL AND PROCEDURAL HISTORY

A.   FACTUAL HISTORY

The substantial evidence issue in this case is focused upon defendant's criminal threat conviction (§ 422).  That conviction occurred in defendant's first trial in this case.  Accordingly, this statement of facts is drawn from the evidence presented in that first trial.

In July 2017, the female victim was 21 years old and had been in a romantic relationship with defendant for three years.  Defendant and the victim lived together, with their daughter, at the victim's parents' house, in Riverside.  During their relationship, defendant pushed, hit, and choked the victim on 10 to 20 occasions.

Defendant worked in construction in Los Angeles.  On July 25, 2017, defendant was angry when he arrived home from work.  Defendant was angry because the victim deleted defendant's name from her bio on Instagram.  Upon defendant's arrival at home, the victim asked defendant to get pizza; defendant was angered by the victim not having dinner prepared for him.  Defendant and the victim drove to the pizza restaurant.

They argued while parked in front of the restaurant.  Defendant said he wanted to end their relationship.  The victim "told him that was fine, but [she] wanted [her] $30 back" that she had given to defendant's mother.  Defendant refused to give the victim $30.  They left without getting pizza.

Defendant drove toward their home.  Defendant was driving aggressively.  The victim told defendant "to calm down."  Defendant stopped the SUV and punched the victim's face.  The victim "blacked out."  The victim told defendant she did not feel

3

well. Defendant said "he didn't care." The punch caused the victim's lip to swell and bleed. The victim saw a woman watering plants. The victim yelled to the woman, "[C]all 911, I just got hit." The woman ignored the victim.

Defendant continued driving. The victim saw two more women. The victim said to them, " 'Please call 911.' " The victim tried to call 911 from her telephone, but defendant took the telephone and threw it out the window of the SUV. Defendant continued driving, opened the door of the SUV, and pushed the victim out of the SUV. The victim ran toward her telephone. A woman, Brenda, had picked up the victim's telephone and called 911.

The victim and police officers, including City of Riverside Police Officer Jose Vasquez, waited approximately an hour for another officer to arrive to photograph the victim's injuries. The victim charged her telephone at Brenda's house because the phone's battery died. After the victim's telephone was charged, she saw that she had missed calls and text messages from defendant. The messages included, " 'Where are you?' "; " 'You're not going to answer me now?' "; and " 'I'm going to kill you.' " The victim was "afraid [defendant] would come back." However, the victim told the police that defendant likely "had gone back to Los Angeles" because his friends lived there. The victim said she felt safe returning home because there was a fence around her parents' house, and she believed defendant was in Los Angeles.

Brenda offered to drive the victim home, and the victim accepted. Brenda dropped the victim off at a corner near the victim's house, approximately one block from the victim's house. While walking home, the victim noticed defendant's SUV was

4

parked around the corner from her house. The victim continued walking toward the house. The victim saw defendant hiding behind a light pole near their house. Defendant ran toward the victim and said, " 'I'm going to kill you, bitch.' " Defendant was holding a boxcutter in his hand. The victim felt scared because she believed defendant was going to kill her.

Defendant grabbed the victim's hair, pulled her head back, and cut the left side of her neck three times. The victim raised her hand, and defendant cut her hand. The victim pushed defendant and screamed for her parents. Defendant continued slashing at the victim. The victim's father came outside, and defendant ran to his SUV and drove away. The victim called 911. When Officer Vasquez arrived, the victim "was pretty much devastated. She was crying, hurt, scared." Officer Vasquez observed that the victim's demeanor was much different than after the incident inside the SUV.

The victim went to the hospital. The victim sustained cuts to her neck, hand, back left side of her torso, and her left breast. The cuts were shallow, superficial injuries. The cuts on the victim's neck were approximately five inches long, and one was one centimeter away from the victim's jugular vein. Meanwhile, defendant crashed his SUV on the campus of the University of California, Riverside, and was arrested.

B.     PROCEDURAL HISTORY

During closing argument, the prosecutor suggested to the jury that the criminal threat charge consisted of the oral threat to kill the victim. The prosecutor said, "In this case he intended [for] her to be scared. He intended it to be a threat. Because he's stepping out of the light with a knife in his hand." The prosecutor continued, "She has

5

to actually be in fear, which she told you she was. And that fear has to be reasonable. Think of the scene, right? It's like a scene from a horror movie. Anyone will be afraid of this scene, absolutely reasonable to be afraid."

In the rebuttal closing argument, the prosecutor said, "I want to make this explicitly clear to all of you. The criminal threat I'm formally electing is—the criminal threat in this case is the statement that he made to [the victim] orally before he slashed her throat. Not the text message. The one he said in person."

## DISCUSSION

### A. SUBSTANTIAL EVIDENCE

Defendant contends substantial evidence does not support the causation element of his criminal threat conviction (§ 422).

"In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

The causation element of a criminal threat conviction requires that the threat cause the victim to be "in sustained fear for his or her own safety or for his or her immediate family's safety." (§ 422; *People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

6

We apply the substantial factor causation standard. (*In re M.S.* (1995) 10 Cal.4th 698, 719-720.) A factor is substantial when it is more " 'than [an] insignificant or merely theoretical' " cause of the victim's fear. (*People v. Jennings* (2010) 50 Cal.4th 616, 643.)

During the prosecutor's direct examination of the victim, the following exchange occurred:

"[Prosecutor]: So he steps out from behind the shadows and says to you, 'I'm going to kill you, bitch'?

"[The victim]: He runs to me, and he tells me he's going to kill me, bitch.

"[Prosecutor]: With a knife in his hand?

"[The victim]: Yes.

"[Prosecutor]: How are you feeling at that point?

"[The victim]: I was just scared.

"[Prosecutor]: Why were you scared?

"[The victim]: Because he was going to kill me.

"[Prosecutor]: Did you believe him?

"[The victim]: Yes."

The foregoing evidence reflects that the victim experienced fear as a result of defendant's statement that he planned to kill her. After the physical attack, the victim called 911. The 911 operator asked, "What's going on there?" The victim responded, "I just had a report right now of my boyfriend abusing me. He hit me and I was with the cops right now. They just left and I was dropped off at home and he was hiding and

7

he just tried to kill me right now." As the phone call continued, the victim again said, "He tried to kill me."

In speaking to the 911 operator, the victim used the word "abus[e]" to describe being punched and pushed out of the SUV. The victim described the superficial boxcutter wounds as defendant "tr[ying] to kill me." One could reasonably infer from this evidence that defendant's verbal threat, "I'm going to kill you, bitch," caused the victim to believe defendant planned to do more than physically abuse her. The threat caused the victim to fear for her life. The verbal threat immediately escalated the situation, in the victim's mind, from abusive to life threatening.

Officer Vasquez responded to the incident in which defendant punched the victim and pushed her from the SUV. Officer Vasquez also responded to the incident in which defendant threatened to kill the victim and then physically attacked her with a boxcutter. During the prosecutor's direct examination of Officer Vasquez, the following exchange occurred:

"[Prosecutor]: Did she—what was her emotional state like when you saw her [after the threat and boxcutter attack]?

"[Officer Vasquez]: She was pretty much devastated. She was crying, hurt, scared.

"[Prosecutor]: Was this different from her demeanor earlier in the night?

"[Officer Vasquez]: Oh, yes."

Officer Vasquez's testimony reflects the victim was more fearful following the threat and boxcutter attack than she was following the incident in the SUV. One can

8

reasonably infer that a substantial factor in causing that heightened level of fear was defendant's threat to end the victim's life. The threat escalated the situation thereby causing the victim to still be scared when Officer Vasquez arrived after the attack. The foregoing evidence is substantial evidence supporting the finding that defendant's threat was a substantial factor in causing the victim's sustained fear.

Defendant contends the victim's lingering fear was due to the physical attack— not the threat. We understand defendant's contention as asserting the physical attack became an intervening cause of the victim's sustained fear. Defendant's parsing of the situation is not reasonable. As one appellate court wrote, "[A] person who hears someone say, 'I will kill you . . . right now,' coupled with seeing a weapon, is quite justified in remaining 'scared shitless.' " (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349.) In reviewing the evidence, there is no reason to conclude that the victim was scared by the threat, but then stopped being scared by the threat because of the physical attack. Rather, the evidence supports the conclusion that the victim was scared by the threat and then her fear became even greater due to the physical attack. In sum, substantial evidence supports the causation element of the criminal threat conviction.

Defendant asserts there is insufficient evidence that his threat caused sustained fear of future violence because the attack happened and the victim "had fended him off," which means the victim did not have sustained fear of future violence, she had "the rush of adrenaline that continues after an exciting event." Section 422, subdivision (a), requires that threat cause the victim "to be in sustained fear for his or her own safety or

9

for his or her immediate family's safety." We will assume, without deciding, that a victim's sustained fear must pertain to injuries that have not yet occurred.

Defendant punched the victim earlier in the night causing her lip to bleed. Then defendant hid behind a post waiting for the victim to arrive home in order to attack her a second time. This evidence indicates that defendant physically attacked the victim in separate incidents that night. As defendant slashed at the victim, the victim screamed for her parents. This evidence indicates that the victim feared the attack would continue if someone did not come to her aid. When the victim's father came outside, defendant ran to his SUV and drove away. This evidence indicates that, as far as the victim knew, defendant was free to return to attack her later that night or the next day. At the time defendant ran away, the victim was screaming. This evidence indicates the victim was noticeably alive when defendant left. Defendant threatened to kill the victim, which indicates defendant wanted to end the victim's life.

A jury could reasonably infer from the foregoing evidence that the victim was scared when Officer Vasquez arrived the second time because she thought defendant would return to attack her a third time given that (1) defendant expressed a desire to kill the victim; (2) the victim was still alive when defendant left; and (3) defendant had already attacked the victim in separate incidents that night, demonstrating his willingness to return and inflict injuries. Therefore, to the extent section 422 requires a fear of injuries not yet inflicted, there is substantial evidence to support a finding of such fear.

B.       SECTION 654

1.       *PROCEDURAL HISTORY*

The charges against defendant included attempted murder (§§ 664, 187, subd. (a)) (Count 1); intimidating a witness (§ 136.1, subd. (c)(1)) (Count 2); domestic violence (§ 273.5, subd. (a)) (Count 3); and making a criminal threat (§ 422) (Count 4). The information does not include specific facts associated with the charges. For example, the information does not indicate that Count 2 is based upon defendant throwing the victim's telephone out the SUV when she tried to call 911.

In defendant's first trial in this case, before Judge Diaz, the prosecutor argued the intimidation charge (Count 2) was comprised of defendant throwing the victim's telephone out of the SUV as she tried to call 911. The prosecutor contended the domestic violence charge (Count 3) consisted of defendant punching the victim while in the SUV. The prosecutor asserted that the threat charge (Count 4) consisted of defendant's oral threat to the victim.

The jury instructions in the first trial did not include particular factual bases associated with the charges. For example, the instruction for intimidating a witness did not specifically reflect that the charge consisted of defendant throwing the victim's phone. Nor did the verdict forms include specific factual bases for the convictions. For example, the Count 2 verdict form reads, "We, the jury, find the defendant GUILTY of Witness Intimidation (136.1 (A) and (B) PC) as charged in Count 2." (Boldface omitted.)

11

In an amended probation report for defendant's sentencing before Judge Hollenhorst, the probation officer wrote, "With regard to Counts 1, 2, 3, and 4, it appears these offenses occurred on the same date but involved separate intent. The defendant initially committed a domestic violence act (Count 3) while driving with the victim, when he punched her in the head and physically assaulted her. He later pushed her out of the car and sent her threatening text messages (Count 4) stating he would kill her. As some time and distance separated these two criminal actions, they are two separate acts. Additionally, the defendant threw the victim's telephone and later arrived at her house in an attempt to prevent her from the [*sic*] reporting the incident and proving [*sic*] testimony (Count 2). He also slashed her with a knife (Count 1). The defendant had time to think about his actions and cease his behavior. However, he continued with his criminal actions after each step until arrested. Accordingly, it does not appear sentencing limitations pursuant to Section 654 apply to Counts 1, 2, 3, and 4." The probation officer's original probation report, which was also read by Judge Hollenhorst, was similar to the amended probation report in the section 654 portion of the report, but the amended report included Count 1, while the original report omitted Count 1.

The People filed a sentencing brief, in which they wrote, "In the instant matter, a detailed analysis of each count reveals that PC654 does not bar punishment for a single charge. In the earlier instance, the defendant starts his assault by punching the victim in the face causing a badly swollen and bloodied lip. This is the violation of Penal Code section 273.5. When she starts screaming for help and says she is calling the police, he

forcibly wrests her phone from her and throws it out the window. That is the violation of Penal Code section 136.1. . . . Some time later, the defendant informs the victim that he is going to kill her. Entirely separate from the statement that he is going to kill her (communicated both via text message and orally), he physically attacks her with the box cutter. As such, punishment for the violations of Penal Code section 422 and 664/187 are in no way barred by Penal Code section 654."

During sentencing, the trial court said, "The Court finds that Penal Code Section 654 does not apply at all in this case. Each crime was a separate crime with a different set of operative facts. And so, Penal Code Section 654 does not apply to any counts. They will all be run consecutively." For Counts 2, 3, and 4 the trial court imposed: (A) a consecutive three-year sentence for Count 2; (B) a four-year sentence for Count 3, which was deemed the principal count; and (C) a consecutive two-year sentence for Count 4.

2.    *ANALYSIS*

Defendant contends Judge Hollenhorst erred in applying section 654 because he was not aware of the factual bases for Counts 2 and 4 that had been argued by the prosecutor in the first trial before Judge Diaz, and the probation reports and sentencing brief did not match the factual bases argued by the prosecutor. Defendant requests that he be resentenced so that he may be sentenced by a court that is aware of the correct factual bases for Counts 2 and 4. Defendant's argument is premised on the theory that, in a section 654 analysis, the trial court is bound by the factual bases that were argued by the prosecutor. We reject defendant's premise.

13

"Section 654, subdivision (a) provides that '[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.' ' " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " ' [Citation.] Intent and objective are factual questions for the trial court, which must find evidence to support the existence of a separate intent and objective for each sentenced offense." (*People v. Jackson* (2016) 1 Cal.5th 269, 353-354.)

"[I]n the absence of some circumstance 'foreclosing' its sentencing discretion[,] a trial court may base its decision under section 654 on *any* of the facts that are in evidence at trial, without regard to the verdicts." (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1340.) However, "where there is a basis for identifying the specific factual basis for a verdict, a trial court cannot find otherwise in applying section 654." (*Id.* at p. 1339, italics omitted.)

In *People v. Siko* (1988) 45 Cal.3d 820, the People argued "that the section 654 ban on multiple punishment was not violated" because there were various acts, other than those already used to support the defendant's rape and sodomy convictions, that could form the basis for the defendant's lewd-conduct conviction. (*Id.* at p. 825.) The Supreme Court rejected the People's argument, writing, "[T]he charging instrument and

14

the verdict both identify the lewd conduct as consisting of the rape and the sodomy rather than any other act." The Supreme Court explained that there was nothing "in the prosecutor's closing argument or in the court's instructions [that] suggest[ed] any different emphasis" for the lewd-conduct conviction. (*Id.* at p. 826.)

*Siko* has been held to be authority for the rule that "where there is a basis for identifying the specific factual basis for a *verdict*, a trial court cannot find otherwise in applying section 654." (*People v. McCoy*, *supra*, 208 Cal.App.4th at p. 1339, italics added.) A prosecutor's closing argument does not set forth a specific factual basis for a jury's verdict because a prosecutor's argument is "not binding on the jury or the court." (*People v. Leonard* (2014) 228 Cal.App.4th 465, 500.) Our Supreme Court has explained, "It is elementary . . . that the prosecutor's argument is not evidence and the theories suggested are not the exclusive theories that may be considered by the jury." (*People v. Perez* (1992) 2 Cal.4th 1117, 1126.)

In the instant case, the jury's deliberations were not constrained by the theory offered by the prosecutor. Without something more, such as a factual basis being included in the information, instructions, or verdict form, the prosecutor's closing argument is insufficient to constrain a trial court's section 654 analysis.

We note the court that issued the *Leonard* opinion issued another opinion that provides, " '[W]here there is a basis for identifying the specific factual basis for a verdict, a trial court cannot find otherwise in applying section 654.' [Citation.] But this rule has been applied where the prosecution proceeded on a single factual basis at trial, as reflected in the charging documents, jury instructions, prosecutor's argument, or

15

verdict forms." (*People v. Carter* (2019) 34 Cal.App.5th 831, 842.)  The foregoing passage relies on a citation to *Siko* among other cases.  (*Carter*, at p. 842.)

One might read *Carter* as indicating that the trial court's section 654 analysis can be constrained solely by a prosecutor's closing argument.  However, because (1) *Carter* relies on *Siko*, and (2) the court that issued *Carter* is the same court that issued *Leonard*, we do not read *Carter* in that manner.  We read *Carter* as setting forth a list of items that one should check to determine if the jury's verdict had a specific factual basis.  The prosecutor's closing argument should be one of the items checked, but, under *Leonard* and *Perez,* it cannot be the sole item to support the conclusion that there was a specific factual basis because the prosecutor's closing argument is "not binding on the jury or the court." (*People v. Leonard*, *supra*, 228 Cal.App.4th at p. 500; *People v. Perez*, *supra*, 2 Cal.4th at p. 1126.)

In support of his premise that a trial court is bound by a prosecutor's closing argument, defendant cites *People v. Bradley* (2003) 111 Cal.App.4th 765.  In *Bradley*, the defendant intended to aid and abet a robbery; however, an attempted murder occurred during the robbery, which the defendant did not intend to aid and abet. Defendant was convicted of the attempted murder on the theory that it "was a 'natural and probable' consequence of the offense she did intend, that is, the robbery." (*Id*. at pp. 768-769.)

In setting forth the defendant's appellate contentions, the court wrote:  "(3) The trial court should have interpreted *the jury's finding* the attempted murder was the 'natural and probable' consequence of the robbery as a finding both crimes flowed from

16

a single intent and thus precluded a consecutive sentence." (*People v. Bradley, supra,* 111 Cal.App.4th at p. 768, italics added.) In its discussion, the *Bradley* court wrote, "Instead the jurors predicated appellant's guilt of the attempted murder count solely on the theory the prosecution tendered, a theory only requiring appellant to entertain a single objective—to rob that victim." (*Id*. at p. 770.)

Defendant does not direct us to a portion of the *Bradley* opinion reflecting the "natural and probable" consequence theory was solely raised in the prosecutor's closing argument. In other words, defendant does not pinpoint a section of *Bradley* indicating the theory appeared nowhere else in the record, i.e., not in the information, instructions, or verdict form. Because we do not see, in the *Bradley* opinion, some indication that the "natural and probable" consequence theory was solely raised in the prosecutor's closing argument, we do not find the case to be persuasive authority for the position that a trial court's section 654 analysis can be constrained solely by a prosecutor's closing argument.

In the instant case, defendant asserts that he should be resentenced because the trial court was misinformed about the factual bases for Counts 2 and 4 due to the probation reports and the sentencing brief contradicting the prosecutor's closing argument in terms of the factual bases for Counts 2 and 4.

A defendant "is entitled to a genuine exercise of sentencing discretion by the trial court [citations] and . . . the court's decision . . . is subject to review for abuse of discretion [citations]." (*In re Large* (2007) 41 Cal.4th 538, 550.) A section 654

17

analysis is a factual one that must be based upon evidence. (*People v. Jackson*, *supra*, 1 Cal.5th at pp. 353-354; *People v. Coleman* (1989) 48 Cal.3d 112, 162.)

Judge Hollenhorst presided over the second trial in this case, which means he was aware of the evidence presented at that trial. Defendant concedes that the victim's testimony was similar in both trials. At both trials, the victim was the primary witness in regard to the sequence of events. Therefore, we are not persuaded that Judge Hollenhorst was misinformed about defendant's course of conduct due to not hearing the victim's testimony in the first trial.

When Judge Hollenhorst announced his section 654 ruling, he said, "The Court finds that Penal Code Section 654 does not apply at all in this case. Each crime was a separate crime with a different set of operative facts. And so, Penal Code Section 654 does not apply to any counts."

A trial court is presumed to have followed the law when exercising its discretion. (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496.) When pronouncing defendant's sentence, Judge Hollenhorst did not indicate the basis for his section 654 ruling, e.g., the evidence, the probation reports, or the sentencing brief. Because the record is silent as to the source of the information Judge Hollenhorst relied upon, we must presume that Judge Hollenhorst based his section 654 decision on the evidence because a section 654 analysis is a factual one that must be based upon evidence (*People v. Jackson*, *supra*, 1 Cal.5th at pp. 353-354; *People v. Coleman*, *supra*, 48 Cal.3d at p. 162). Therefore, we conclude the trial court did not abuse its discretion.

## C. INTENT AND EQUAL PROTECTION

### 1. *CONTENTION*

Defendant contends the criminal threat statute was not meant to apply to statements made during an act of violence. Additionally, defendant contends "there was insufficient evidence" that he intended his threat to instill sustained fear in the victim. Further, defendant asserts that his criminal threat conviction violates equal protection because he was merely narrating the attack so he should be treated the same as a person who attacked without speaking. We will address these issues separately.

### 2. *FACTUAL AMBIGUITY*

At the outset of this multi-contention issue, we note that the record of the first trial is ambiguous concerning the timing of the verbal threat.[2] The ambiguity arises from the following section of the prosecutor's direct examination of the victim, which was set forth in part *ante*:

"[Prosecutor]: So he steps out from behind the shadows and says to you, 'I'm going to kill you, bitch'?

"[The victim]: He runs to me, and he tells me he's going to kill me, bitch.

"[Prosecutor]: With a knife in his hand?

"[The victim]: Yes.

"[Prosecutor]: How are you feeling at that point?

---

[2] Again, we are limiting our review of this issue to the record of the first trial because that is the trial in which the jury found defendant guilty of making a criminal threat, and it is that conviction that defendant is challenging.

"[The victim]: I was just scared.

"[Prosecutor]: Why were you scared?

"[The victim]: Because he was going to kill me.

"[Prosecutor]: Did you believe him?

"[The victim]: Yes.

"[Prosecutor]: What was he doing with the knife?

"[The victim]: He grabbed me by the hair, and he pulled my head back, and he sliced me three times here. And I was trying to defend myself, and I put the hand in front of him, and he sliced my hand.

"[Prosecutor]: For the record, the witness has pointed to the left side of her neck when she said he sliced her three times here.

"The Court: Yes."

At the beginning of that line of questioning, the victim said defendant ran to her and said he was going to kill her. One could understand the "and" as describing simultaneous or sequential events. So, that statement could mean defendant (1) ran to the victim while threatening to kill her, or (2) defendant ran to the victim and then threatened her.

The victim went on to say that defendant had a knife in his hand. The prosecutor asked what defendant was doing with the knife and the victim described defendant cutting her throat. An ambiguity is created at that point because if one reads the "and" *ante* as defendant running then threatening the victim, then it is possible to understand the threat as happening during the boxcutter attack. When the prosecutor asked, "What

20

was he doing with the knife?," the prosecutor did not specify a moment for that question. For example, "What was he doing with the knife when he made that statement?" or "What was he doing with the knife after he made that statement?" Due to the lack of clarity in the prosecutor's question, the victim's response that defendant was attacking her with the boxcutter could be understood as defendant attacking the victim with the boxcutter while saying he would kill her.

On appeal, defendant's contentions are premised on the theory that defendant made the threat while physically attacking the victim. For example, in his briefing defendant wrote, ". . . statements of intent made *while* committing an act of violence." The People's response is premised on the theory that defendant made the threat before physically attacking the victim. For example, the People wrote, "By threatening to kill [the victim], and then actually attempting to kill her." Thus, it appears there is a factual dispute concerning the sequence of events.

We write that it "appears there is a factual dispute" because, on appeal, defendant is inconsistent in describing his version of the events. In some areas of defendant's briefing, he writes that defendant threatened the victim "immediately before attacking her," which would indicate defendant agrees with the People's version of the timeline. Defendant vacillates between the threat being made "contemporaneously with the assault," which we understand to mean prior to injuries being inflicted, and the threat being "made at the time of the attempted murder," which we understand to mean while injuries were being inflicted.

21

### 3.     *STATUTORY INTERPRETATION*

Defendant contends the criminal threat statute (§ 422) does not encompass statements about a physical attack that are made contemporaneous to the physical attack. Defendant asserts the criminal threat statute applies to threats about future attacks.

Questions that are purely academic may be dismissed as moot. (*People v. Travis* (2006) 139 Cal.App.4th 1271, 1280.) In the realm of appeals, an issue is academic when the controversy is not a "concrete actuality." (*Hagan v. Fairfield* (1965) 238 Cal.App.2d 197, 202.)

In the instant case, the timeline of events can reasonably be interpreted as defendant making the threat before defendant cut the victim's neck. As explained *ante*, the victim testified, "He runs to me, and he tells me he's going to kill me, bitch." That testimony can be understood as defendant threatening the victim before inflicting any injuries. The issue raised by defendant is whether the threat statute applies when a threat is made at the same time as the physical attack. If we discussed the applicability of the threat statute (§ 422) to a contemporaneous physical attack, then that would be an academic discussion because, in this case, the evidence can support a finding that the threat preceded the physical attack. In other words, it is not a concrete actuality that defendant threatened the victim while cutting her neck.

As set forth *ante*, on appeal, defendant asserted that he threatened the victim "*while* committing an act of violence." However, defendant also asserted he threatened the victim "immediately before attacking her." To the extent defendant is arguing, or

22

intended to argue, that the violent physical attack encompassed the entire incident with the boxcutter—beginning when the victim saw him hiding behind the post—and thus a threat conviction is improper for any menacing statement made during the entirety of that incident, we find such an argument to be unpersuasive.

Section 422, subdivision (a), requires that a threat be "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an *immediate prospect* of execution of the threat." (Italics added.) In regard to "immediate prospect," one appellate court, quoting another appellate court, wrote, " '[w]e understand the word "immediate" to mean that degree of seriousness and imminence which is understood by the victim to be attached to the *future prospect* of the threat being carried out.' " (*People v. Wilson* (2010) 186 Cal.App.4th 789, 807.) For the sake of judicial efficiency, rather than conduct an analysis of the statutory language, we rely on the foregoing caselaw for the proposition that section 422 applies to threats of future harm. We leave for another day the issue of whether the statute also encompasses menacing statements made in the midst of physical violence.

The evidence supports a finding that defendant threatened the victim before cutting her neck. Therefore, at the time defendant made the threat, the violence and injuries, i.e., the execution of the threat, were future prospects. Because the evidence supports a finding that defendant made the threat before inflicting physical injuries, we conclude the sequence of events falls within the conduct prohibited by section 422.

### 4.    *INTENT*

Defendant contends there is insufficient evidence from which the jury could conclude that he was trying to place the victim in sustained fear by threat of some harm in the future.  That contention fails because the statute requires no such showing.

" ' "The interpretation of a statute is a question of law, which we review de novo." ' " (*Bright v. 99¢ Only Stores* (2010) 189 Cal.App.4th 1472, 1477.)  Our fundamental task when interpreting a statute is to determine the Legislature's intent. We begin by examining the statute's plain language.  If the plain language clearly demonstrates the Legislature's intent, then we go no further in our examination.  (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616-617.)

In regard to intent, section 422 provides that the threat must be made "with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out."  There is nothing in the plain language of the statute reflecting that a defendant must intend the victim to be in sustained fear.  In regard to sustained fear, the statute provides that the threat must cause the victim to experience sustained fear.  (§ 422.)  So, for example, if a defendant intended the victim to experience only two seconds of fear, that intent is not relevant.  The relevant issue concerning intent is whether defendant intended his statement to be perceived as a threat.

In sum, in reviewing the plain language of section 422, we conclude the intent element is not concerned with a defendant's intention for the amount of time the victim

24

experiences fear. Therefore, we will not examine if there is substantial evidence to support a finding that "he was trying to place [the victim] in sustained fear."

### 5. *EQUAL PROTECTION*

We now turn to the equal protection issue. Defendant contends, "An attempted murder with an outburst is not inherently more criminal than an attempted murder without an outburst. Yet if this sort of statement is included in the criminal threats statute, then the outburst will be subject to punishment even though it has not added to the harm suffered by the victim in the moment of attack."

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.] Accordingly, ' "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." ' [Citation.] 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' " (*People v. Brown* (2012) 54 Cal.4th 314, 328.)

Defendant asserts he is similarly situated to people who attack their victims without communicating. Defendant contends he is similarly situated to that group because he was narrating the attack. As set forth *ante*, evidence supports the conclusion that defendant threatened the victim before he cut her neck. Therefore, the two groups being compared are (1) people who threaten victims prior to inflicting injuries, and (2) people who do not communicate when inflicting injuries.

25

Criminal threats "are punishable because of the state's interest in protecting individuals from the fear of violence, the disruption fear engenders and the possibility the threatened violence will occur." (*In re M.S.* (1995) 10 Cal.4th 698, 714.) A person who communicates a threat prior to a physical attack would be subject to conviction under the criminal threat statute because the person communicated a statement that caused fear, and that is precisely the type of behavior the criminal threat statute seeks to punish. A person who does not communicate during an attack would not be subject to conviction under the criminal threat statute because the person did not use communication to cause fear of violence.

The purpose of the criminal threat statute is to punish communication that causes fear of violence. A group that communicates prior to an attack and a group that does not communicate during an attack are not similarly situated for purposes of a statute that is focused on communication. Accordingly, we conclude defendant's right of equal protection was not violated.

D.    CONSECUTIVE SENTENCE

      1.    *PROCEDURAL HISTORY*

When sentencing defendant, the trial court said, "Under Penal Code Section 1170.15, under a violation of Penal Code Section 136.1, the Court must impose a full middle term consecutive to the principal term. Penal Code Section 136.1, the triad is two, three, four. The defendant is sentenced consecutively to three years in state prison for that count."

26

2. *ANALYSIS*

Defendant contends the trial court incorrectly believed it was required to impose a consecutive prison term for the witness intimidation conviction (§ 136.1). (§ 1170.15.) The People concede, "It does . . . appear from the record that the trial court misunderstood its sentencing discretion on Count 2." However, the People contend the trial court would have imposed the same sentence absent the misunderstanding.

"An abuse of discretion occurs when the trial court . . . is unaware of its discretion." (*In re White* (2020) 9 Cal.5th 455, 470.) Section 1170.15 provides, "[I]f a person is convicted of a felony, and of an additional felony that is a violation of Section 136.1 or 137 and that was committed against the victim of . . . the first felony, . . . the subordinate term for each consecutive offense that is a felony described in this section shall consist of the full middle term of imprisonment for the felony for which a consecutive term of imprisonment is imposed." Section 1170.15 does not mandate a consecutive prison term. (*People v. Woodworth* (2016) 245 Cal.App.4th 1473, 1479.) "[I]nstead [it] indicates that if the trial court chooses consecutive sentencing it must impose a full-term sentence for the witness dissuasion count." (*Ibid.*)

The trial court said, "Under Penal Code Section 1170.15 . . . the Court must impose a full middle term consecutive to the principal term." There are two ways of understanding the trial court's statement: (1) the trial court believed a full middle term was mandatory because it chose the consecutive term; or (2) the trial court believed the statute required a consecutive full middle term. Because the People concede that "it appear[s] . . . the trial court misunderstood its sentencing discretion," we will assume

27

the trial court mistakenly believed a consecutive term was mandatory, and therefore, the trial court abused its discretion by not being aware of its discretion.

When a trial court is unaware of its discretionary sentencing authority, our Supreme Court has " 'held that the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*People v. Flores* (2020) 9 Cal.5th 371, 432.)

When sentencing defendant, the trial court said, "So the factors in aggravation are overwhelming." The trial court imposed the upper term on Count 3, which was the principal term. The trial court's aggravating factors conclusion and upper term decision indicate that the trial court found defendant's crimes warranted a lengthier prison sentence. Also, separately from the section 1170.15 discussion, the trial court said, "And so, Penal Code Section 654 does not apply to any counts. They will all be run consecutively." The trial court's statement, indicates that, even without section 1170.15, the trial court believed defendant's prison terms should be served consecutively.

Defendant asserts it is speculation to conclude that the trial court would have imposed a consecutive term on Count 2 if it had been aware of its discretion. Defendant asserts that without a statement such as " '[I]f I had discretion, I still would not impose a concurrent term,' " the matter must be remanded. Defendant's argument does not explain why this record is unclear. The trial court's statement about overwhelming aggravating factors; its choice of an upper term; and its separate, second, statement

28

about consecutive terms, are clear indications to us that the trial court concluded a lengthier prison sentence was necessary and would have imposed a consecutive term on Count 2 if it had been aware of its discretion on the subject. In sum, the record clearly indicates the trial court would have reached the same conclusion if it had been aware of its discretion. We find the error to be harmless.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
                                                                          J.


We concur:


RAMIREZ _____
                    P. J.


SLOUGH _____
                    J.